IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BENITO MORALES, SR,

                        Petitioner,

              vs.

JOE A. LIZARRAGA, Warden, Mule
Creek State Prison,

                   Respondent.

No. 2:15-cv-00077-JKS

MEMORANDUM DECISION

Benito Morales, Sr., a state prisoner proceeding *pro se*, filed a Petition for a Writ of
Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Morales is in the custody of the
California Department of Corrections and Rehabilitation and incarcerated at Mule Creek State
Prison. Respondent has answered, and Morales has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

On December 1, 2010, Morales was charged with transporting methamphetamine and
possessing methamphetamine for sale. Both counts further alleged a prior drug conviction as a
sentence enhancement and that the current charges were committed while Morales was on bail.
The information additionally alleged one prior conviction and four prior prison terms. On direct
appeal, the California Court of Appeal recounted the following facts underlying the charges
against Morales:

> In October 2010, agents of the Yolo County Narcotics Enforcement Team
> (YONET), including District Attorney investigator Agent Jonathan Updegraff and
> Deputy Gary Hallenbeck with the Yolo County Sheriff's Department, executed a search
> warrant on a mobile home in West Sacramento. The agents were looking for heroin.
> Three occupants of the mobile home were detained outside while the agents conducted
> the search.

During the search, a cell phone inside the mobile home rang. The caller's name appeared on the phone's screen as "Benito." When Agent Updegraff said the name, Deputy Hallenbeck responded: "[T]hat's Benito Morales." Deputy Hallenbeck knew Agent Updegraff had contacted [Morales] within the previous five or six months during an investigation of methamphetamine sales and believed [Morales] was the "Benito" on the phone. When Agent Updegraff answered the phone, one of the detained occupants outside the trailer yelled: "[D]on't come over." The caller apparently did not hear the warning and said he would "be there in 25 minutes." Agent Updegraff responded: "[C]ome over."

A short time later, [Morales] drove into the mobile home park with another man, Marshall Torres, in the passenger seat. The car was stopped and both men were detained while the car was searched. Agents found a prescription pill bottle in the center console of the car; [Morales'] name was printed on the label. Inside the bottle was a plastic bag containing 7.8 grams of methamphetamine. While the car was being searched, [Morales] said to Torres: "[I]f I take this . . . I'll get life. If you take this, you'll get a program."

Agents obtained a warrant to search [Morales'] house. A digital scale with a "crystal substance" on "the balance portion of the scale" was found on a table in the garage. Also in the garage, "75 small new and unused Ziploc coin bags" were found. Agents also found two surveillance cameras at the house. One kept watch over the table in the garage and the other had a view of the driveway leading to the garage door. Based on the quantity of methamphetamine found in the car, the fact a digital scale with "crystal-type residue" and small plastic coin bags were found at [Morales'] house, and the existence and positioning of the surveillance cameras, Deputy Hallenbeck believed the methamphetamine was possessed for sale.

*People v. Morales*, No. C072287, 2014 WL 4105932, at *1 (Cal. Ct. App. Aug. 21, 2014).

Morales proceeded to a jury trial on February 14, 2012. He moved to bifurcate the trial on the enhancements, which was granted. At the conclusion of trial, the jury found Morales guilty of both counts. The court subsequently found true the prior conviction and four prior prison term allegations and sentenced Morales to an aggregate term of 15 years' imprisonment.

Through counsel, Morales appealed his conviction, arguing that: 1) the evidence was legally insufficient to support the court's true finding on one of his prior prison term enhancements and the corresponding prior conviction because he was never lawfully sentenced on his 1988 conviction; and 2) his rights to due process and a fair trial were violated when the trial court allowed the prosecution to introduce impermissible character evidence through the

2

testimony of Agent Hallenbeck. The Court of Appeal modified the judgment to strike the prior prison term enhancement based on his 1988 conviction, agreeing with Morales that, because the prior prison term had been nullified, Morales did not serve a "prior separate prison term" as required for the prior prison term enhancement. *Morales*, 2014 WL 4105932, at *7. The Court of Appeal affirmed the judgment in all other respects. *Id.* Morales filed a counseled petition seeking review of his claim that the prior conviction enhancement based on his 1988 conviction should also be struck because a valid sentence was not imposed and that the prosecution elicited improper character evidence. The Supreme Court denied the petition for review without comment on October 29, 2014.

While his direct appeal was pending, Morales filed in the California Superior Court four separate *pro se* petitions for habeas relief that all alleged that Morales had received ineffective assistance of counsel with respect to his bifurcated trial on the prior conviction and prior prison term enhancements and complaining that counsel, who was appointed to represent Morales with respect to the trial on the enhancements, did not properly move for a new trial. The petitions were all summarily denied for failure to make a prima facie case.

Morales then raised those ineffective assistance of counsel claims in a *pro se* petition for habeas relief filed in the Court of Appeal. The Court of Appeal likewise denied the petition without comment on February 28, 2013. Morales then filed a second *pro se* habeas petition in the Court of Appeal which alleged ineffective assistance of appellate counsel and challenged the legality of the search and seizure. That petition was summarily denied on June 19, 2014. Morales also filed a third *pro se* habeas petition in the Court of Appeal on the ground that the prosecution introduced false evidence and suppressed exculpatory evidence. The Court of

Appeal denied the petition without comment on November 13, 2014. Morales also raised his habeas claims to the California Supreme Court in three *pro se* habeas petitions that were summarily denied on May 22, 2013, December 17, 2014, and March 11, 2015, respectively.

While his third *pro se* petition in the Supreme Court was pending, Morales timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on January 7, 2015. *See* 28 U.S.C. § 2244(d)(1)(A).

## II. GROUNDS/CLAIMS

In his *pro se* Petition before this Court, Morales argues that: 1) his rights to due process and a fair trial were violated when the prosecution was allowed to introduce impermissible character evidence through the testimony of Agent Hallenbeck; 2) there was insufficient evidence to support the true finding on the prior conviction enhancement based on his 1988 conviction; 3) appellate counsel rendered ineffective assistance by failing to argue on appeal that the trial court erroneously refused to allow Morales to call a material witness; 4) the unreasonable search and seizure of his car violated his constitutional rights and appellate counsel was ineffective for failing to raise the issue on appeal; 5) the trial court erroneously instructed the jury with respect to the transporting methamphetamine charge and appellate counsel was ineffective for failing to raise the issue on appeal; 6) appellate counsel rendered ineffective assistance by failing to argue on appeal that the trial court erroneously refused to allow Morales to call a material witness;[1] 7) appellate counsel rendered ineffective assistance by not applying to expand the scope of his representation to file motions for post-conviction relief on Morales' behalf; 8) appointed counsel rendered ineffective assistance by "sabotag[ing]" his motion for a

_____

[1]     This claim appears to raise the same arguments as those raised in Ground 3.

new trial; and 9) appellate counsel rendered ineffective assistance with respect to the new trial motion.[1]

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

_____

[1]     This claim appears to raise the same arguments as those raised in Ground 8.

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

A.    <u>*Evidentiary Error*</u> (Grounds 1)

Morales first argues that the trial court violated his rights to due process and a fair trial when it admitted impermissible character evidence through the testimony of prosecution witness Officer Hallenbeck. According to Morales, Deputy Hallenbeck's testimony was improper character evidence introduced to establish that Morales had a propensity to engage in the type of

conduct of which he was charged. California Evidence Code § 1101(a) provides that "evidence

of a person's character or a trait of his or her character (whether in the form of an opinion,

evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible

when offered to prove his or her conduct on a specified occasion." Morales additionally

contends that the evidence should have been excluded under California Evidence Code section

352, and the inflammatory nature of the evidence violated his federal right to a fair trial.[2]  In

considering this claim on direct appeal, the Court of Appeal laid out the following factual

background:

> [Morales] represented himself at trial.  During his cross-examination of Deputy
> Hallenbeck, [Morales] asked whether he was "a person of interest involved in narcotic
> trafficking" at the time the mobile home was searched. Deputy Hallenbeck answered:
> "Absolutely."  A short time later, [Morales] asked: "Did you ever learn of the person that
> was the supplier to the narcotics that was supposed to be taken to the [mobile home]?"
> Deputy Hallenbeck answered: "To the best of our knowledge, it was you."  Then, in
> response to a series of [Morales'] questions, Deputy Hallenbeck explained that when the
> cell phone rang in the mobile home and the name "Benito" appeared on the screen, he
> suspected the caller was [Morales] because he "had prior knowledge that [Morales was]
> involved in sales of heroin and methamphetamine."

---

[2]       Morales argues in his Traverse that the real problem with Deputy Hallenbeck's
testimony is that it is false.  This Court does not need to address arguments raised for the first
time in the Traverse.  *See Delgadillo v. Woodford*, 527 F.3d 919, 930 n.4 (9th Cir. 2008)
(holding that reply is not the proper pleading to raise new arguments); *Cacoperdo v.
Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) ("A Traverse is not the proper pleading to raise
additional grounds for relief.").  In any event, Morales' perjury contention is without merit.
"[T]he [Supreme] Court has consistently held that a conviction obtained by the knowing use of
perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable
likelihood that the false testimony could have affected the judgment of the jury."  *United States
v. Agurs*, 427 U.S. 97, 103 (1976) (footnotes omitted).  However, Morales provides nothing but
his unsupported assertion that Hallenbeck's testimony was perjured, which is wholly insufficient
to warrant habeas relief.  *See Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (granting
habeas relief "on the basis of little more than speculation with slight support" is improper);
*Phillips v. Woodford*, 267 F.3d 966, 973 (9th Cir. 2001) (unsupported, conclusory allegations are
not enough to warrant an evidentiary hearing).

[Morales] asked: "By 'prior knowledge,' are you talking about surveillance cameras or recordings of any kind or reports of any kind or were you just going on hearsay? What do you have to substantiate what you just said?" Deputy Hallenbeck answered he had "no documentation." [Morales] continued: "So you just formed this opinion on the phone monitor and the fact that you were serving a search warrant at the [mobile home], and that was enough for you to say this guy's bringing drugs over, or he's going to come over with some drugs. Invite him over? Is that how that worked?" Deputy Hallenbeck answered: "When the phone rang and the name appeared on the phone, with our prior knowledge—" [Morales] interrupted: "'Our'?" Deputy Hallenbeck responded: "Agent Updegraff, who had just contacted you within five or six months prior to this during a—" [Morales] again interrupted: "And you know this how?" Deputy Hallenbeck answered: "Because he told me." At this point, a hearsay objection from [Morales] was overruled and Deputy Hallenbeck continued: "Agent Updegraff had prior knowledge of a methamphetamine sales investigation where you were arrested for it. He had—he was the last one of us that actually saw you and spoke to you, so immediately when he saw the name on the phone, he said, 'Benito.' I said, that's Benito Morales. Agent Updegraff agreed, answered the phone, and said, come over."

On redirect, the prosecutor asked: "And you mentioned, I believe, earlier this morning that Agent Updegraff had told you about a previous investigation—a recent investigation to this case to [Morales] being involved in the sale of controlled substances such as methamphetamine?" [Morales] objected, "[o]n the basis that it's prejudicial and has no bearing on this case." When the trial court observed [Morales] was "the one who elicited the testimony," [Morales] responded: "Not the way he's asking it. He's connecting it to a whole different scenario, your Honor. He's rephrasing it into something entirely different."

The trial court then allowed [Morales] and the prosecutor to argue the matter outside the presence of the jury. The prosecutor explained he intended to elicit from Deputy Hallenbeck that he had information from sources other than Agent Updegraff indicating [Morales] was involved in the sale of heroin and methamphetamine. [Morales] argued: "I still think it's prejudicial. I don't see what the relevance is pertaining to this case, because he's already testified to that. They've already heard that. I mean, to dwell on it and to dig into it is what he wants to elaborate on for the jury's prejudicial effect, and I don't think it's—it would be denying me a fair trial if you allow him to do that. [¶] Because he answered that question earlier to a question that wasn't even really relative to that response, but it got in, but I wasn't going to make an issue out of it and make an objection and make it bigger. But that doesn't mean he can bring it up now and elaborate on it and bring in the fact that Updegraff knew me 20 or 30 years ago."

The trial court then stated [Morales'] objection appeared to be based on Evidence Code section 352. [Morales] responded: "Yes, your Honor, I believe it's highly prejudicial. I'm already labeled a drug trafficking dealer already behind—already there's enough stuff for that. For him to dwell on it is like painting the picture or putting the rest of the pieces of the puzzle that are still scattered, and it's still questionable whether I'm this drug dealer they're expecting to arrive. [¶] I think it's highly prejudicial, your

Honor.  I think the Court would more effectively grant me a fair trial by not allowing that to be dwelled on in front of the jury."

The trial court addressed the prosecutor: "I'm inclined to permit you to say, you testified on cross-examination that you heard from Agent Updegraff that [Morales] had been arrested for methamphetamine sales.  He will say yes, in which case, you may say, did you hear that he was involved in sales from any sources other than Agent Updegraff." [Morales] then clarified he was not charged in the prior case with the sale of methamphetamine, but rather possession for sale.  The prosecutor offered to clarify that for the jury as well.  The trial court agreed and stated: "[T]hat balances the relevance and the potential for prejudice under [Evidence Code section] 352."

The prosecutor then asked Deputy Hallenbeck: "I just want to clarify something you had said on cross.  You had said that Agent Updegraff told you that [Morales] had been arrested for sales of methamphetamine, and I just want—did he tell you if it was for sales or possession for sales?"  Deputy Hallenbeck answered: "Possession for sales." The prosecutor then asked: "And Deputy Hallenbeck, had you—during your time as a YONET agent, your eight years as a YONET agent, you—had you received information from other sources besides Agent Updegraff that [Morales] was involved in the sale of drugs such as methamphetamine?"  Deputy Hallenbeck answered: "Yes."

*Morales*, 2014 WL 4105932, at *2-4.

Federal Rule of Evidence 404(b), the federal counterpart to California Evidence Code

§ 1101(b), states:

Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character . . .  [It] may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

"So long as the evidence is offered for a proper purpose, such as to prove intent, the

district court is accorded wide discretion in deciding whether to admit the evidence, and the test

for admissibility is one of relevance."  *United States v. Johnson*, 132 F.3d 1279, 1282 (9th Cir.

1997) (citations omitted).  Evidence is relevant if "it has any tendency to make a fact more or

less probable than it would be without the evidence [and] the fact is of consequence in

determining the action."  FED. R. EVID. 401.

Federal Rule of Evidence 403, the federal counterpart to California Evidence Code section 352, permits the exclusion of evidence if its probative value is "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  "A district court is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules.  Assessing the probative value of [the proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . . ."  *United States v. Abel,* 469 U.S. 45, 54 (1984); *see Boyd v. City and Cnty. of San Francisco*, 576 F.3d 938, 948 (9th Cir. 2009).  California employs a similar rule.  *See People v. Harris*, 118 P.3d 545, 565 (Cal. 2005) ("We review for abuse of discretion a trial court's rulings on the admissibility of evidence.").

In this case, the California Court of Appeal declined to consider whether the evidence was properly admitted because it found that, in any event, any error in admitting the evidence was harmless:

> Indeed, as [Morales] argued when he objected to this evidence below, Deputy Hallenbeck "already testified," and the jury "already heard," [Morales] was arrested during an investigation involving the sale of methamphetamine.  Deputy Hallenbeck also testified on cross-examination [Morales] was "a person of interest involved in narcotic trafficking" at the time the mobile home was searched.  Thus, the challenged evidence was largely duplicative of testimony [Morales] elicited himself.  The only additions to Deputy Hallenbeck's testimony elicited by the prosecutor were (1) the arrest was for possession for sale, rather than actual sales, and (2) Agent Updegraff's encounter with [Morales] was not the only source for Deputy Hallenbeck's belief [Morales] was involved in the sale of methamphetamine.  The first of these additions cannot be said to have harmed [Morales].  The second adds little to the testimony, elicited by [Morales], that Deputy Hallenbeck believed him to be involved in methamphetamine sales.  In other words, if [Morales] was prejudiced at all, he was prejudiced by his own cross-examination of Deputy Hallenbeck.
> More importantly, the case against [Morales] was very strong.  While law enforcement officers were searching the mobile home for heroin, a man named "Benito"

called a cell phone in the mobile home and said he would be there in 25 minutes. A short time later, defendant Benito Morales pulled into the trailer park with Torres in the passenger seat. The car was stopped and searched. A prescription pill bottle in the center console contained a plastic bag with 7.8 grams of methamphetamine. [Morales'] name was printed on the label of the bottle. While the car was being searched, [Morales] said to Torres: "[I]f I take this . . . I'll get life. If you take this, you'll get a program." The subsequent search of [Morales'] house uncovered the digital scale with "crystal-type residue," Ziploc coin bags, and surveillance cameras.

In light of this compelling evidence, even had the trial court excluded Deputy Hallenbeck's testimony he "received information from other sources besides Agent Updegraff that [Morales] was involved in the sale of drugs such as methamphetamine," we have no doubt the jury would have concluded [Morales] transported and possessed the methamphetamine for sale. "Accordingly, a result more favorable to [Morales] was not reasonably probable absent admission of the [challenged] evidence. [Citations.] For the same reasons, any error was harmless beyond a reasonable doubt. [Citations.]" (*People v. Lindberg* (2008) 45 Cal. 4th 1, 26.)

*Morales*, 2014 WL 4105932, at *4-5.

To the extent Morales argues that the trial court erred under state law, he cannot prevail on such claim. The Supreme Court has made clear that federal habeas power does not allow granting relief on the basis of a belief that the state trial court incorrectly interpreted the state evidence code in ruling on the admissibility of evidence. *Estelle*, 502 U.S. at 72 (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In this context, the Supreme Court has defined the category of infractions that violate fundamental fairness very narrowly, limiting them to specific guarantees enumerated in the Bill of Rights. *Id.* at 73 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)); *Lincoln v. Sunn*, 807 F.2d 805, 816 (9th Cir. 1987) ("[i]ncorrect state court evidentiary rulings cannot serve as a basis for habeas relief unless federal constitutional rights are affected"). So, even if the trial court erred in its application of §§ 352 and 1101, such error is not a ground for federal habeas relief. *See Estelle*, 502 U.S. at 67-68.

Similarly, to the extent Morales argues that Hallenbeck's testimony inflamed the jury by suggesting Morales' propensity to commit the present crime, the United States Supreme Court has never held clearly that the introduction of propensity evidence violates due process. *See Estelle*, 502 U.S. at 75 n. 5 ("we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime"); *Mejia v. Garcia*, 534 F.3d 1036, 1046 (9th Cir. 2008) (rejecting habeas petitioner's challenge to propensity evidence, where petitioner could point to no Supreme Court precedent establishing that admission of otherwise relevant propensity evidence violated the Constitution). In the absence of clearly established Supreme Court law on this issue, AEDPA relief is foreclosed. *See Knowles v. Mirzayance*, 556 U.S. 111, 121 (2009) ("it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (citations and internal quotations omitted); *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented, . . . it cannot be said that the state court unreasonably applied clearly established Federal law") (citation, internal brackets and quotations omitted).

Moreover, an independent review of the record reveals that the appellate court's determination that any alleged error was harmless is reasonable under the circumstances under which the testimony was elicited[3] and in light of the "very strong" evidence against Morales.[4]

---

[3]     Although Morales represented himself at trial and therefore he himself, rather than an attorney, elicited Officer Hallenbeck's testimony, Morales does not allege in any way that his request for self-representation should have been rejected.

[4]     Other courts have admonished that harmless error review should not be confused with the sufficiency of the evidence inquiry required under *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). *See, e.g.*, *Jensen v. Clements*, 800 F.3d 892, 902 (7th Cir. Sept. 8, 2015) ("Time and

*See Brecht v. Abrahamson*, 507 U.S. 619, 622, 629 (1993) (harmless error standard applies to evidentiary errors). The appellate court's harmless determination does not contravene or unreasonably apply Federal law. Morales therefore cannot prevail on his evidentiary error claim.

B.     *Sufficiency of the Evidence* (Ground 2)

Morales next contends that there was insufficient evidence to support the prior drug conviction enhancement (CAL. HEALTH & SAFETY CODE § 11370.2) because he was never lawfully sentenced in that case. With respect to the 1988 drug conviction, the trial court imposed a prior conviction enhancement as well as a prior prison term enhancement. Because Morales was unrepresented at the sentencing on the 1988 drug conviction, the federal court granted habeas relief and ordered resentencing. Because it was not clear that resentencing had occurred, the Court of Appeal vacated the prior prison term enhancement. Morales argues that the Court of Appeal should also have vacated the prior conviction enhancement based on that conviction because the "conviction" only happens in a criminal case when the trial court orally pronounces the sentence. According to Morales, because the habeas court nullified the sentence, it nullified the judgment and thus "he was never convicted in the first place because he was never sentenced, and in criminal cases the sentence *is* the judgment." *Morales*, 2014 WL 4105932, at *6.

_____

time again, the Supreme Court has emphasized that a harmless-error inquiry is not the same as a review for whether there was sufficient evidence at trial to support a verdict."). The Court's reliance on the overwhelming evidence against Morales in finding any error harmless does not simply focus on the sufficiency of the other evidence, but rather properly "look[s] at the influence the improperly admitted [evidence] had on the verdict," in light of a "host of factors," including the overall strength of the prosecution's case. *Id.* at 904 (citations omitted).

The essence of this argument is that the state appellate court's interpretation of California sentencing law in the sentence determination is incorrect. The Court of Appeal, examining California state law, determined that, "while the habeas decision rendered the imposition of sentence a nullity, it did not erase the underlying 'conviction' in the sense that word is used" with respect to the prior conviction enhancement. *Id.* at 7. This Court is bound by the state court's interpretation of California state law determining the validity of Morales' prior conviction. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

Moreover, even assuming that Morales is correct that the trial court misapplied California law, absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing law does not warrant habeas relief. *Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir. 1994); *see also Miller v. Vasquez*, 868 F.2d 1116 (9th Cir. 1989) (declining to examine state court's determination that habeas petitioner's prior conviction was for a "serious felony" under state sentencing regime). Federal courts are "bound by a state court's construction of its own penal statutes," *Aponte v. Gomez*, 993 F.2d 705, 707 (9th Cir. 1993), and this Court therefore must defer to the California courts' application of the state's law on prior drug conviction enhancements unless that interpretation is "untenable or amounts to a subterfuge to avoid federal habeas review of a constitutional violation." *Oxborrow v. Eikenberry*, 877 F.2d 1395, 1399 (9th Cir. 1989). Morales does not allege that the state court's application of that law was either untenable or done to avoid federal review of his sentence. Nor has Morales shown that the trial court's decision was arbitrary, capricious, or fundamentally unfair in violation of federal due process. *See Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir. 1994). Accordingly, Morales is not entitled to relief on this claim.

C.       *Freestanding Ineffective Assistance of Counsel Claims* (Grounds 3, 6-9)

Morales additionally avers that counsel rendered ineffective assistance in a variety of ways.  To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that appellate counsel's performance was deficient and that the deficient performance prejudiced his defense.  466 U.S. 668, 687 (1984).  A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.*

The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief.  *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95.  Where a habeas petition governed by AEDPA alleges ineffective assistance of counsel, the *Strickland* prejudice standard is applied and federal courts do not engage in a separate analysis applying the *Brecht* harmlessness standard.  *Avila v. Galaza*, 297 F.3d 911, 918, n.7 (9th Cir. 2002); *see also Musalin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009).  Under this rubric, in reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold."  And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

Thus, Morales must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

The *Strickland* standards apply to appellate counsel as well as trial counsel. *Smith v. Murray*, 477 U.S. 527, 535-36 (1986); *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989). However, an indigent defendant "does not have a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Moreover, there is no obligation to raise meritless arguments on a client's behalf, *see Strickland*, 466 U.S. at 687-88 (requiring a showing of deficient performance as well as prejudice), and counsel is not deficient for failing to raise a weak issue, *see Miller*, 882 F.2d at 1434. In order to establish prejudice in the context of ineffective assistance of appellate counsel, a petitioner must demonstrate that, but for counsel's errors, he probably would have prevailed on appeal. *Miller*, 882 F.2d at 1434 n.9.

Morales fails to satisfy his heavy burden with respect to any of his claims. In Grounds 3 and 6, Morales argues that appellate counsel was ineffective for failing to argue on appeal that he was unconstitutionally denied the use of a material witness. According to Morales, he should have been granted a continuance to properly subpoena Commander Sevillo, the arresting officer

in his case. The record reflects, however, that the trial court declined the request because Morales had not timely subpoenaed Sevillo and because, at the time of trial, Sevillo was out for an indefinite period of time because of a medical issue. Morales fails to show a federal constitutional violation because he has failed to show that there was anything arbitrary about the court's denial. Moreover, Morales fails to show that Sevillo's failure to testify deprived him or a meaningful opportunity to present a defense, or that his trial was fundamentally unfair by the failure to testify, *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973), because, as appellate counsel explained to Morales in the correspondence Morales attaches to his Petition, "there's [an] insufficient offer of proof as to what [Sevillo] would testify that's not duplicative or not cumulative of other testimony that was presented regarding your car stop." For these reasons, Morales fails to show that appellate counsel was ineffective for omitting the issue on direct appeal.

In Ground 7, Morales faults appellate counsel for not moving to expand the scope of his representation and filing motions for post-conviction relief on Morales' behalf. However, there is no federal constitutional right to counsel during state post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 554 (1987). Appellate counsel thus could not be compelled to request that the scope of his representation be expanded.

Morales additionally argues in Ground 8 and 9 that counsel was ineffective with respect to his new trial motion. But he provides nothing more than his unsupported assertion that counsel "sabotaged" his new trial motion. Such argument is far too speculative to demonstrate ineffective assistance, and wholly insufficient to establish entitlement to habeas relief. *See Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (granting habeas relief "on the basis of little

more than speculation with slight support" is improper); *Phillips v. Woodford*, 267 F.3d 966, 973

(9th Cir. 2001) (unsupported, conclusory allegations are not enough to warrant an evidentiary

hearing).  Morales is therefore not entitled to relief on any contention advanced in support of

these grounds.

D.     *Illegal Search and Seizure* (Ground 4)

Morales next contends that his Fourth Amendment rights were violated by the search and

seizure of his car and that appellate counsel was ineffective for failing to raise that issue on

appeal.  To the extent that Morales brings a true Fourth Amendment claim, such claim is not

cognizable on federal habeas review because his arguments are precluded by the Supreme

Court's decision in *Stone v. Powell*, 428 U.S. 465 (1976).  Under *Stone*, "where the State has

provided an opportunity for full and fair litigation of a Fourth Amendment claim," federal habeas

corpus relief will not lie for a claim that evidence recovered through an illegal search or seizure

was introduced at trial.  The Ninth Circuit has made clear that all *Stone* requires is that the State

provide a petitioner the opportunity to litigate his Fourth Amendment claim.  *See Moormann v.*

*Schiro*, 426 F.3d 1044, 1053 (9th Cir. 2005).  "The relevant inquiry is whether petitioner had the

opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was

correctly decided."  *Oritz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996).  California

provides such an opportunity,[5] *see* CAL. PENAL CODE § 1538.5; *Gordan v. Duran*, 895 F.2d 610,

613-14 (9th Cir. 1990), and thus Morales' Fourth Amendment claim is not cognizable here.

---

[5]        The record also shows that Morales filed a suppression motion, which the trial
court denied.

Notably, the Supreme Court has concluded that the restrictions on federal habeas review of Fourth Amendment claims announced in *Stone* do not extend to Sixth Amendment claims of ineffective assistance of counsel challenging counsel's actions with respect to motions to suppress evidence allegedly obtained in violation of the Fourth Amendment. *Kimmelman v. Morrison*, 477 U.S. 365, 382-83 (1986). Because of this, Morales' corresponding ineffective assistance claim relating to appellate counsel's failure to raise the issue on direct appeal is cognizable on federal habeas review.

Although it is cognizable, the corresponding ineffective assistance of appellate counsel claim is nonetheless without merit. "The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment-subject to a few specifically established and well-delineated exceptions.'" *Mincey v. Arizona*, 437 U.S. 385, 390 (1978) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). One such exception to the warrant requirement is the automobile exception. *Carroll v. United States*, 267 U.S. 132, 153-56 (1925). Under the automobile exception, "police may conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains evidence of a crime." *United States v. Scott*, 705 F.3d 410, 417 (9th Cir. 2012) (quoting *United States v. Brooks*, 610 F.3d 1186, 1193 (9th Cir. 2010)). The applicability of this exception "does not turn on whether the car's owner or driver has already been taken into custody or the risk of mobility has otherwise been eliminated." *Id.* at 416; *see also United States v. Davis*, 530 F.3d 1069, 1084 (9th Cir. 2008) (upholding search of legally parked car that followed the arrest of that car's driver); *United States v. Hatley*, 15 F.3d 856, 858, 860 (9th Cir. 1994) (upholding

vehicle search conducted after police stopped defendant in his vehicle and returned him to his

residence). Furthermore, the doctrine permits law enforcement agents to search all parts of a

vehicle for contraband when probable cause exists for the initial search. *United States v. Ross*,

456 U.S. 798, 824 (1982) ("If probable cause justifies the search of a lawfully stopped vehicle, it

justifies the search of every part of the vehicle and its contents that may conceal the object of the

search.").

As appellate counsel explained in the correspondence Morales attaches to his Petition:

> Your second concern was the warrantless stop of your car. While [the] mobile
> home was being searched, [the home's occupant] told the officers that he was out of
> heroin but was expecting a resupply. [His] phone rang; your name ("Benito") showed up
> on the Caller ID of this cell phone; officer answered it; and a voice said he would be
> there in 25 minutes; and officer said to come over. Officer believed "Benito" referred to
> you, because one agent had a prior contact with you regarding a separate investigation
> and separate criminal case for possession for sale of meth, I believe. Other officers were
> aware of this investigation but were not directly involved.
>
> Based on your arrival less than 25 minutes later, the fact that your name matched
> the caller ID, the fact that you drove through the mobile home tract without stopping after
> making eye contact with an officer driving in [the] opposite direction, and the officer's
> prior knowledge of the separate narcotics case, there was reasonable cause to stop your
> vehicle and detain you. In view of the totality of the circumstances in the evidence
> presented, this issue does not have sufficient merit for me to raise on appeal based on the
> applicable law and standards of review.
>
> For officer safety reasons, the officers were permitted to ask you and front seat
> passenger Torres to step out of the car and do a *Terry* frisk/search[6] for weapons.
>
> Officers learned that Torres was wanted on an outstanding felony warrant, and
> arrested him on that basis. Torres also had a hypo syringe on his person.
>
> Your third argument was to the warrantless search of the car. The trial court
> upheld the car search on the automobile exception to the warrant requirement and found
> officers had probable cause to believe the car [had] contraband or evidence of a crime. It
> also relied upon the search incident to arrest exception. Torres and you were secured
> outside on the ground near your vehicle. In light of the evidence presented, this issue
> does not have sufficient merit for me to raise on appeal based on the applicable law and
> standards of review.

---

[6]     *Terry v. Ohio*, 392 U.S. 1 (1968) (holding that a limited frisk is lawful if an
officer has reasonable suspicion to believe that a suspect is armed and dangerous).

Trial counsel's assessment, and explanation for why he did not challenge the search and seizure on appeal, is fully supported by the record, which includes the trial court's denial of Morales' suppression motion. Morales has thus failed to show that an appellate claim again attacking the search and seizure would have been meritorious. As explained above, there is no obligation to raise meritless arguments on a client's behalf. Appellate counsel's decision to raise claims with arguably more merit than the search and seizure claim now advocated by Morales was well "within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 771 (1970); *see also Smith v. Robbins*, 528 U.S. 259, 288 (2000) ("appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal"). For these reasons, Morales is not entitled to relief on his search and seizure claim or the corresponding ineffective assistance of appellate counsel claim.

E.    *Instructional Error* (Ground 5)

Finally, Morales avers that the trial court erroneously instructed the jury on the elements of the transportation offense, and that trial counsel was ineffective for failing to raise the issue on appeal. Because jury instructions in state trials are typically matters of state law, federal courts are bound by a state appellate court's determination that a jury instruction was not warranted under state law. *See Bradshaw*, 546 U.S. at 76 (noting that the Supreme Court has repeatedly held that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *see also Williams v. Calderon*, 52 F.3d 1465, 1480-81 (9th Cir. 1995). An instructional error, therefore, "does not

alone raise a ground cognizable in a federal habeas proceeding." *Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1986) (citation omitted).

A challenged instruction violates the federal constitution if there is a "reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." *Boyde v. California*, 494 U.S. 370, 380 (1990). The question is whether the instruction, when read in the context of the jury charges as a whole, is sufficiently erroneous to violate the Fourteenth Amendment. *Francis v. Franklin*, 471 U.S. 307, 309 (1985). This Court must also assume in the absence of evidence to the contrary that the jury followed those instructions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the law that jurors follow their instructions"); *see Francis*, 471 U.S. at 323-24 & n.9 (discussing the subject in depth).

It is well-established that not only must the challenged instruction be erroneous but it must violate some constitutional right, and it may not be judged in artificial isolation but must be considered in the context of the instructions as a whole and the trial record. *Estelle*, 502 U.S. at 72. This Court must also bear in mind that the Supreme Court has admonished that the inquiry is whether there is a reasonable likelihood that the jury applied the challenged instruction in a way that violates the constitution and that the category of infractions that violate "fundamental fairness" is very narrowly drawn. *Id.* at 72-73. "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process clause has limited operation." *Id.* Where the defect is the failure to give an instruction, the burden is even heavier because an omitted or incomplete instruction is less likely to be prejudicial than an instruction that misstates the law. *See*

*Henderson*, 431 U.S. at 155. In those cases, the inquiry is whether the trial court's refusal to give the requested instruction "so infected the entire trial that the resulting conviction violates due process." *See id.* at 156-57; *Estelle*, 502 U.S. at 72. Moreover, even if the trial court's failure to give the instruction violated due process, habeas relief would still not be available unless the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *California v. Roy*, 519 U.S. 2, 5 (1996).

The record here indicates that the trial court inadvertently used the word "purpose" instead of "presence" when orally instructing the jury on the elements of the transportation offense. However, the court correctly used the word "presence" when instructing on a substantially similar element for the possession for sale offense. Moreover, the written instructions for the transportation offense, which the jury had in their possession during deliberations, correctly used "presence." Given that the error appears inadvertent and the correct instructions were also given, Morales fails to show that the error violated his due process rights or had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637. For the same reasons, Morales fails to show that the issue would have been successful on appeal, and he thus fails to show prejudice from appellate counsel's omission.

## V. CONCLUSION AND ORDER

Morales is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: March 6, 2018.

                                            _/s/James K. Singleton, Jr._____
                                             JAMES K. SINGLETON, JR.
                                             Senior United States District Judge